ANDREW FROTHINGHAM *versus* EBENEZER MARCH, ESQ.

Notifications of real estate by an executor or administrator, printed three weeks successively, are sufficient, although *neither* of the notifications was published thirty days previous to the sale.

THIS was an action of *covenant.* The declaration stated that the defendant, on the —— day of ———, at ———, by his deed of that date, duly executed, acknowledged, and registered, in Court to be produced, did, as administrator of the goods and estate of *T. T.*, deceased, with his last *will and testament* annexed, in consideration of 1050 dollars paid by the plaintiff, bargain and sell a certain tract of land, (*described,*) to have and to hold the same to the plaintiff, his heirs and assigns, to his and their use forever ; and that the defendant, by the same deed, did, among other things, covenant to and with the plaintiff that, at the time of executing [ * 248 ] the deed aforesaid, he, * *the defendant,* had full right, power, and authority to convey all the interest and right which the said *T. T.* had, at his decease, in the land aforesaid, to the plaintiff and his heirs, to his and their use; *and that he had pursued the directions of the law in the sale of the same,* and that the plaintiff, his heirs and assigns, should, by force of said deed, hold the same against the claims of all persons claiming the same under the said *T. T.*, but not against any other claims. Breach alleged as to all the above covenants, and in the words of the same.

The defendant pleaded in bar, that, on the —— day of ———, the said *T. T.*, at ———, was seised of the tenements aforesaid, with the appurtenances, in his own demesne, in fee-simple, and that, being so seised, he then and there made his last *will and testament* in writing, duly executed, and therein appointed one *E. R.*, executor of the same will; that the said *T. T.*, thereafterwards, *viz.*, on the —— day of ———, died so seised of the lands, &c., and afterwards, at a probate court, holden at ———, on the —— day of ———, before the honorable *S. H., Esq.*, judge of the same court,

FROTHINGHAM *vs.* MARCH.

the said *will* was duly proved, approved, and allowed ; and the said *E. R.*, appointed executor as aforesaid, then and there, in the said court, refused to accept of the said appointment, and to execute the said *will;* whereupon administration of the goods and estate of the said *T. T.*, with his *will* annexed, was then and there, in the said court, by the said judge, committed to him, the said *E. M.*, *the defendant*, who then and there accepted the said trust, and gave bonds to the said judge, with two sufficient sureties, conditioned for his, the said *E. M.'s*, faithful administration of the said goods and estate of the said *T. T.*, according to the form by law in that behalf provided; all which, by the records thereof in said Probate Court remaining, appears. And the *said *E. M.* further says, that the personal estate which [ * **249** ] was of the said *T. T.*, at the time of his death, was insufficient to pay all the debts which he then owed, by a large sum, *viz.*, the sum of 5880 dollars; wherefore, at a Court of Common Pleas, holden at ———, upon the petition of the said *E. M.*, showing the said insufficiency, it was ordered by the same court that the said *E. M.* be empowered to sell, and to make and execute good, sufficient deed or deeds to convey so much of the real estate of the said *T. T.*, deceased, as should amount to the sum of 5900 dollars, for the payment of the just debts of said deceased, and incidental charges, the said *E. M.* to be under oath, as the law directs, *and to give public notice of the time and place of sale, by causing a notification thereof to be published three weeks successively in the Newburyport paper*, and to account for the proceeds of said sale with the judge of probate of the said county, as by the record of the said petition and order in the same Court of Common Pleas remaining appears. And the said *E. M.* further says, that afterwards, and before the fixing of the time and place of sale hereinafter mentioned, *viz.*, at ———, on the 15th day of April, in the same year, he made oath before *N. P., Esq.*, a justice of the peace of the said county, duly commissioned and qualified to execute that office, that, in disposing of the estate lately belonging to the said *T. T.*, deceased, he, the said *E. M.*, would use his best skill and judgment in fixing on the time and place of sale, and that he would exert his utmost endeavors to dispose of the same in such manner as would produce the greatest advantage to all persons interested therein, and *that* without any sinister views whatever; (*a*) a certificate of which oath, under the hand of the said justice, he, the said *E. M.*, *afterwards, at ———, on the —— day of ———, re- [ * **250** ] turned to the said judge of probate. And the said *E.*

(*a*) See *stat.* of March 9, 1784, *sect* 17 '*stat.* 1783, *c.* 36.)

*M.* further says, that afterwards, *viz.*, on the —— day of April aforesaid, at ————, he, by virtue of the order aforesaid, proposed to sell the tenements aforesaid at public auction, for the payment of the just debts of the said deceased, and fixed on the 9th of May then next, at ten of the clock in the forenoon, for the time of selling the same as aforesaid, and the sale to be on the premises ; *and then and there caused a notification thereof to be published in the* Newburyport *paper, calld the* Newburyport Herald, *which was published on the* 16*th day of April aforesaid; and further caused the same notification to be again published in the* same paper, *on the* 23*d day of the same April; and further caused the same notification to be again published in the* same paper, *on the* 30*th day of the same April; and further caused the same notification to be again published in the* same paper, *on the* 7*th day of* May *then next.* And the said *E. M.* further says, that, on the ninth day of the same May, at ten of the clock in the forenoon, on the premises, he caused the same to be sold at public auction, and the same were then and there struck off to the plaintiff, for the sum of 1050 dollars, that being the highest sum offered for the same ; whereupon he, the said *E. M.,* thereafterwards, on the 13th day of the same May, executed the deed mentioned in the plaintiff's declaration, as he well and lawfully might ; and the said plaintiff, then and there, by force of the said deed, entered into the said tene ments aforesaid, with the appurtenances, and became seised thereof in his own demesne in fee-simple, and still quietly and peaceably holds the same as aforesaid ; and all this the said *E. M.* is ready to verify. Wherefore, &c.                     *T. Parsons.*

To this plea, the plaintiff, protesting that he, by virtue [ * 251 ] of said deed, did not become seised of * the premises in his own demesne in fee-simple, and that he does not quietly and peaceably hold the same, demurred generally. And the defendant joined in demurrer.

*Putnam* for the plaintiff. The only point which will be made is, whether such notice of the sale as is required by law has been given. By the *first section* of the act of March 4, 1784, (*stat.* 1783, *c.* 32,) it is provided " that executors and administrators, previous to making sale of real estate, shall give thirty days' public notice, by posting up notifications of such sale in the town or plantation where the lands lie, as well as where the deceased person last dwelt, and in the two next adjoining towns, as also in the *shire* town of the county." It is true that, by the 6*th section* of the act of Feb. 14, 1789, it is provided that " the printing a notification, three weeks successively, in such gazette or newspaper as the court who may authorize the sale shall order and direct, shall be deemed equivalent to the posting up of notifications as aforesaid." This is given in lieu of the other

method of notifying; but it is believed the *first* notification which is printed in a newspaper, must be at least thirty days previous to the time set for the sale, and *that* notice given in the papers three weeks successively. Possibly, the *last* publication ought to be thirty days previous to the sale. Whichever be the true construction, the defendant has not brought his case within the act, as even the *first* notification was not more than 24 days previous to the sale. The plaintiff contends that the *last* act does not alter the *time*, but only the *mode* of giving notice, and therefore that he is entitled to judgment.

*Parsons* for the defendant. The only exception to the plea is, that it does not show thirty days' previous notice. It certainly does not. But the question is, whether the provisions of the *last* act * as to notice, are not intended as a complete [ * **252** ] substitute for those of the *former* statute. It is obvious that the act of 1789 does not repeal the former law, not only from the clause read by the counsel for the plaintiff, but also from the provision that is made for perpetuating the evidence of the notice, when given in the manner pointed out in the act of 1784. There are, then, two distinct, separate and independent provisions as to the mode of giving notice,—the *first* provision (which must always be followed, unless there is a special order of the court which authorizes the sale, directing the other mode) is, that the notifications shall be posted up thirty days previous to the sale ; the other is, that the notification shall be printed three weeks successively, in such gazette or newspaper as the court authorizing the sale shall direct. In either case, the manifest object of the law is, to call together bidders, so that the estate may be advantageously sold ; and it is obvious that, in many cases, the *last* method of giving notice will be more effectual for that purpose than the *former*. Advertisements are liable to be torn down, and lost or destroyed, and the notice forgot ; but as, from the local situation of many estates which it may be necessary to sell for the purposes of the law, notifications published in a newspaper would not answer the object, would not in fact be giving *effectual* notice, the legislature has invested the courts with a discretionary power on the subject, not only as to directing in what newspaper the notification shall be printed, but also whether, in any particular case, that mode of notice shall be permitted. But whenever *it is* directed by the Court, the statute is express, that, being printed three weeks successively, it shall be equivalent to the other mode of notice. The legislature is silent as to the first or last or either of the publications being printed thirty days previous to the sale ; nor, as is believed, could any possible * convenience result if the construction con- [ * **253** ] tended for by the counsel for the plaintiff were adopted,

or, on the other hand, that there would arise any inconvenience from adopting the construction insisted on by the defendant, or rather taking the provision according to the direct, plain, and obvious meaning of the words. If the construction for which the plaintiff contends should be adopted by the Court, a great. proportion, perhaps one half, of the sales which have been made in this state by administrators since the act of 1789, would be broken up—an evil which the Court, by their decision in this case, would, as he hoped, prevent.

*Prescott,* for the plaintiff, in reply, cited the opinion of the *Chief Justice, Dana,* in a former case, in which the question, now before the Court, was made upon this very deed—and in which he was strongly inclined to think that the notice was insufficient, because it was not thirty days previous to the sale. (THACHER, J. I was present, and was of a different opinion.) *Prescott.* The plaintiff is desirous of holding the land, and therefore he wishes, if the law be so, that the defendant's plea may be adjudged good ; the object of the suit is to have the point settled ; but for the reasons which have been given, it is obvious that the first notification ought to have been printed thirty days previous to the sale, the statute being intended to alter the *mode,* not the *time* of notice.

THACHER, J. I have not altered the opinion which I expressed in the case mentioned by one of the counsel for the plaintiff. I then thought that the notice was sufficient; such notice as the law requires; the consequence is, that, in my opinion, the plea in bar is good, and that the defendant is entitled to judgment.

SEWALL, J. In this case, it has been argued that the statute means either, *first,* that the last notification should be printed [ * **254** ] thirty days previous to * the sale, or, *secondly,* that the first notification should have been printed *that* length of time previous ; and that the statute was intended to alter the *mode* only, not the *time* of giving notice.

As to the *first,* the construction mentioned is absurd ; and as to the *second,* the construction which seems to be relied on, is against the express words of the statute : it is clear to my mind, that the legislative provision in the second act extends to the *time* as well as to the *mode* of notice ; and that it would have been difficult to use words which should more clearly express that intention. The last act mentions the *then* existing provision as to the notice to be given by administrators; it does not repeal the former law, but provides for perpetuating the evidence, &c., and then subjoins—"and the *printing* a notification *three weeks* successively, &c., shall be deemed *equivalent* to the posting up notifications *as aforesaid.*" Here, then, is a *new mode* pointed out. which may, when the Court shall direct,

FROTHINGHAM *vs.* MARCH.

be followed instead of the other; and the words used which relate to the *mode* are not more clear, definite, or positive, than those which relate to the *time*. The first act says, notifications shall be *posted up thirty days* previous to the sale; the second act says, notifications shall be *printed three weeks* successively; the *mode* of notice mentioned in the second act is not more clearly distinguished from the former, than the *time* mentioned in the second is from that prescribed in the first act. For what reasons then are the Court to give such a construction, as is either absurd in itself, or unreason able, or against the obvious meaning of the express and positive words of the statute? I am clearly of opinion that the plea in bar is sufficient.

SEDGWICK, J. There is no doubt that an authority must be ex actly pursued; and, therefore, that the requisites of the law must in *this case* have *been strictly complied with. [ * **255** ] If the law required that all or any of the publications should be thirty days previous to the sale, the defendant has broken his covenant; otherwise not. The *first* act requires notifications to be posted up thirty days previous to the sale; the *second* act, the act upon which the defendant relies, provides that *printing* a notifi- cation *three weeks* successively shall be deemed equivalent to the posting up of notifications as aforesaid. In this case, it appears by the plea, and is confessed by the demurrer, that the notification was printed three weeks successively, and in the paper pointed out by the order of the Court which authorized the sale. The defend ant then has brought his case within the express words of the statute; and as it appears to me, it is within the *sense*, the plain and obvious meaning of the words; nor can I conceive any reason for giving them any other construction, than that which arises from the common and obvious import of the words used in the act. It is not contended by the plaintiff's counsel that the object intended would not be as fully and completely attained by the notice plead- ed, as if the first notification had been printed 30 days previous to the sale. Surely then there is no reason for going beyond the words of the statute, where there is no purpose to be answered by it.

The construction upon which the plaintiff relies would, if adopted and made a decision of the Court, shake many sales which have been made by executors and administrators—a consideration which ought, perhaps, to have some weight; but were the present case the only one of the kind, I should be of the opinion which I have already given. (*a*)

*Judgment for the defendant.*

(*a*) [Vide *Revised Statutes, c.* 71, § 15.—ED.]